**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

BRAD BARTON,

      Plaintiff,

          v.

STEVEN MERSEREAU-KEMPF, et al.,

      Defendants.

CASE NO. 1:23-CV-97-HAB

## OPINION AND ORDER

Plaintiff Brad Barton ("Barton") originally filed this suit against Defendants Steven Mersereau-Kempf ("Kempf") and Wal-Mart Transportation, LLC ("Walmart"), in the Grant County Superior Court on January 25, 2023, bringing claims for negligence, as well as negligent hiring, training, and supervision. (ECF No. 7). Defendants removed the case to this Court on March 6, 2023. (ECF No. 1). Defendants have moved for partial summary judgment. (ECF No. 78). That motion is now fully briefed. (ECF Nos. 82, 83).

## I.    FACTUAL BACKGROUND

Barton's claims arise out of a driving incident that occurred on December 14, 2022. (ECF No. 79 at 2).[1] Kempf, a Walmart employee, was driving a semi-tractor with a trailer that evening, operating within the course and scope of his employment. (*Id.*) He left the Walmart Distribution Center in Gas City, Indiana, and stopped near the intersection of Indiana State Road 22 and I-69 to get something to eat. (*Id.*) At the same time, Barton was driving westbound on State Road 22, near I-69, headed to work at Advanced Cabinet Systems in Gas City, Indiana. (*Id.*)

---

[1] Citations in the Factual Background section are to Defendants' Statement of Material Facts. All facts cited in this section are undisputed by Barton.

After he was done eating, Kempf got back in his semi-tractor and began heading towards I-69 north, which required him to take State Road 22 to get to the interstate entrance ramp. (*Id.* at 3). He stopped at the exit to the parking lot before turning left onto State Road 22, which has an eastbound lane, a westbound lane, and a center lane. (*Id.*) He did not see any traffic heading westbound before he pulled out of the parking lot and began his eastbound turn. (*Id.*) Barton did not see Kempf, and struck the trailer on the driver's side near its rear axle assembly. (*Id.*)

The parties both offer additional facts as to Kempf's hiring, training, and supervision. Some of them are disputed. But, as explained below, those facts would not be material to the dispute. For that reason, the Court does not discuss them here.

## II.     LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the district court of the basis of its motion and identifying those portions of designated evidence that show the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After "a properly supported motion for summary judgment is made, the adverse party must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation marks and citation omitted).

A factual issue is material only if resolving the factual issue might change the outcome under the governing law. *See Clifton v. Schafer*, 969 F.2d 278, 281 (7th Cir. 1992). A factual issue is genuine only if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party on the evidence presented. *See Anderson*, 477 U.S. at 248. In deciding a motion for summary judgment, the court "may not 'assess the credibility of witnesses, choose between

competing reasonable inferences, or balance the relative weight of conflicting evidence.'" *Bassett v. I.C. Sys., Inc.*, 715 F. Supp. 2d 803, 808 (N.D. Ill. 2010) (quoting *Stokes v. Bd. of Educ. of the City of Chi.*, 599 F.3d 617, 619 (7th Cir. 2010)). Instead, it must view all the evidence in the light most favorable to the non-moving party and resolve all factual disputes in favor of the non-moving party. *See Anderson*, 477 U.S. at 255.

## III.    DISCUSSION

Defendants seek summary judgment in their favor on Barton's claims for negligent hiring, training, and supervision, as well as on Barton's claim for punitive damages.

### A.  Negligent Hiring, Training, and Supervision

In his Complaint, Barton brings direct negligence claims against Kempf, and additional negligent hiring, training, and supervision claims against Walmart. (ECF No. 7 at 3-4). Defendants argue that the negligent hiring, training, and supervision claims are precluded because Walmart would be vicariously liable should Barton succeed on his negligence claims against Kempf. (ECF No. 79 at 5-7). Barton does not object to the dismissal of his claims for negligent hiring or supervision, but argues that his negligent training claim should proceed under the "unwitting intermediary theory."[2] (ECF No. 82 at 3-5).

The parties do not dispute that Kempf was acting within the course and scope of his employment. *See* ECF No. 1 ¶¶ 4, 6; ECF No. 15 ¶¶ 6, 7. Therefore, if Kempf is proven negligent, Walmart will be held vicariously liable pursuant to the doctrine of *respondeat superior*. *See Stropes v. Heritage House Children's Ctr.*, 547 N.E.2d 244, 247 (Ind. 1989) ("Respondeat superior

---

[2] The Court notes that Indiana courts generally consider negligent hiring, training and supervision to make up one single claim. *See Branscomb v. Wal-Mart Stores East, L.P.*, 165 N.E.3d 982, 985 (Ind. 2021) ("Indiana recognizes the tort of negligent hiring, training and supervision[.]").

3

imposes liability, where none would otherwise exist, on an employer for the wrongful acts of his employee which are committed within the scope of employment.").

Pursuant to Indiana law, "when an employer admits that an employee was acting within the course and scope of his or her employment, absent special circumstances, negligent hiring claims are precluded." *Sedam v. 2JR Pizza Enters.*, 84 N.E. 3d 1174, 1179 (Ind. 2017). Therefore, Defendants argue, Barton may not bring claims against Walmart for negligent hiring, training, and supervision.

Barton disagrees, arguing that the "unwitting intermediary theory" protects his negligent training claim from dismissal. (ECF No. 82 at 3-5). He defines the theory as "aris[ing] when the jury may determine an employee was not at fault or was not the cause of the claimed injury due to the employee's lack of knowledge, understanding, direction, or inadequate information from their employer," citing the Restatement (Second) of Torts § 317. (*Id.* at 4). Barton's explanation as to how this theory applies is that Walmart negligently failed to properly train Kempf on safe left turn maneuvers and the length of time needed to complete left-hand turns—training Barton refers to as "gap acceptance." (*Id.* at 4-5).

The Court is not persuaded. Barton is correct that Indiana has adopted Section 317 of the Restatement (Second) of Torts with regards to claims for negligent hiring, training, or supervision. *See Sedam*, 84 N.E.3d at 1179; *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 609 (7th Cir. 2008). The problem for Barton, however, is that the comments to Section 317 clarify that it "is applicable only when the servant is acting outside the scope of his employment." Indiana case law, similarly, has been clear that negligent hiring, training, and supervision claims are precluded in situations in which the tortfeasor employee is acting in the course and scope of employment. *See Sedam*, 84 N.E.3d 1174, 1176-78 (Ind. 2017); *Branscomb*, 165 N.E.3d at 985;

4

*see also Perron v. JP Morgan Chase Bank, N.A.,* 2014 WL 931897, at * 5 (S.D. Ind. Mar. 10, 2014) ("A cause of action based on negligent hiring, training and supervision is appropriate only where it is alleged that the employee acted outside the scope of his or her employment; otherwise the doctrine of *respondeat superior* provides the proper vehicle for a direct action aimed at recovering the damages resulting from a specific act of negligence committed by an employee within the scope of his employment.") (internal quotation marks omitted).

In arguing that his claim is nonetheless permissible, Barton cites four opinions, all issued by courts in different states applying different states' laws. *See* ECF No. 82 at 4 (citing *Ferrer v. Okbamicael*, 390 P.3d 836, 845–46 (Col. 2017); *Clooney v. Geeting*, 352 So. 2d 1216, 1220 (Fla. Dist. Ct. App. 1977); *Diaz v. Carcamo*, 51 Cal. 4th 1148, 1160, 253 P.3d 535, fn. 1 (2011); *Willis v. Hill*, 116 Ga. App. 848, 159 S.E.2d 145, fn. 6 (1967)). This Court sits in diversity jurisdiction, and must apply Indiana law to this case[3]—neither of the parties dispute this. Where Indiana law is clear—as is this case here—this Court should not look to other jurisdictions.

As the Supreme Court of Indiana clarified in a recent opinion, claims for negligent training can survive summary judgment alongside claims brought under the doctrine of *respondeat superior* for an employee's negligence only when "there is a genuine issue of material fact on the scope-of-employment issue." *Community Health Network, Inc. v. McKenzie*, 185 N.E.3d 368, 377 (Ind. 2022). Here, there is no genuine issue of material fact on the scope-of-employment issue, as neither party disputes that Kempf was acting within the scope of his employment. Therefore, the

---

[3] "It is well established that in a diversity case, Indiana's choice of law rules determine the applicable state law . . . The general rule for torts is that the law of the state where the injury occurred controls." *Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 372 F. Supp. 3d 709, 716 (N.D. Ind. 2019) (internal quotation marks omitted). Here, the injury occurred in Indiana, and Indiana tort law governs.

Court grants summary judgment in favor of Defendants on Barton's claim for negligent hiring, training, and supervision.

### B.  Punitive Damages

Barton does not explicitly seek punitive damages in his Complaint. However, he alleges gross negligence, which—if proven—could implicate a claim for punitive damages. (ECF No. 7 at 3-4). Defendants argue that Barton has offered no evidence that Defendants' actions met the heightened standard required to demonstrate gross negligence and merit punitive damages. (ECF No. 79 at 8-10). Barton does not object to dismissal of his gross negligence claims. (ECF No. 82 at 3). Therefore, the Court grants summary judgment in Defendants' favor on Barton's claims for gross negligence.

## IV.    CONCLUSION

For the above-stated reasons, the Court GRANTS the Motion for Partial Summary Judgment (ECF No. 78). The Court dismisses Barton's claims for negligent hiring, training, and supervision as well as his claims for gross negligence.


**SO ORDERED** this 17th day of June, 2026.


s/Holly A. Brady
CHIEF JUDGE HOLLY A. BRADY
UNITED STATES DISTRICT COURT